**Opinion filed June 23, 2011**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00188-CR

_____

## VICTOR ANDREW FIORENTINI, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 23189-A**

### M E M O R A N D U M   O P I N I O N

The jury convicted Victor Andrew Fiorentini of the offense of assault on a public servant. The trial court assessed appellant's punishment at confinement for two years and a $1,500 fine, suspended the imposition of the sentence, and placed appellant on community supervision for a period of three years. We affirm.

### *Issues on Appeal*

Appellant does not challenge the sufficiency of the evidence to support his conviction. Appellant presents two issues for review. In his first issue, appellant contends that his conviction is invalid and violated his right to due process of law because the State withheld evidence from

him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In his second issue, he contends that his conviction is invalid because the State altered or tampered with the audio portion of the video recording that was used as evidence against him at trial.

*The Indictment*

The two-count indictment alleged that appellant assaulted Abilene Police Officer Aron Bryan. Count I alleged that appellant grabbed Officer Bryan's foot with his hand and twisted her foot. Count II alleged that appellant struck Officer Bryan on her face with his hand.

*The Evidence at Trial*

We have reviewed the record in its entirety. The record shows that, in 2007, appellant and his wife, Denise, lived in a house at 633 Sayles Boulevard in Abilene, Texas. Their son, Anthony Fiorentini, lived with them. On November 9, 2007, appellant and Denise got into an argument. During the argument, appellant pulled out a gun and held it to his head. Denise called the police. Appellant was arrested for disorderly conduct and spent the night in jail. Denise and Anthony left the house and stayed with a friend.

On November 11, 2007, Denise and Anthony wanted to get some personal items from the house at 633 Sayles. Because she feared appellant, Denise called the police and requested that the police perform standby while she and Anthony retrieved personal items from their house. Officer Bryan and Abilene Police Officers Cortney Bailey and Joe Long arrived at the scene to perform the standby. Denise and Anthony could not get into the house through the front door because appellant had barred it. They also could not get into the house through the garage because appellant had locked the garage door. Denise and Anthony, followed by the officers, entered the backyard through a gate. Appellant was sitting in a chair at a table on the back porch. He was drinking whiskey and smoking a cigar. He was intoxicated. By his own admission, he had consumed about fifteen ounces of whiskey in the last four hours.

Denise and Anthony entered the house through the back sliding glass doors. The officers stayed in the backyard. Officer Bailey explained to appellant why the officers were there. She told him that the officers would leave as soon as Denise and Anthony gathered their belongings from the house. Appellant became verbally abusive and aggressive toward the officers. The officers told appellant to remain seated and again explained to appellant that the officers would leave as soon as Denise and Anthony gathered their belongings. Appellant continued with his

2

verbal abuse. He threw his cigar at Officer Bryan and got out of his chair. Appellant did not comply with Officer Bryan's command to sit back down.

Officer Bryan was standing in between appellant and the sliding glass doors. Appellant approached Officer Bryan. Officer Bryan told appellant to sit back down, but he would not. Appellant attempted to shove her out of the way. Officer Bryan testified that appellant then punched her in the left side of her head with his right fist. As a result of the punch, Officer Bryan stumbled backwards. Officer Bailey pepper sprayed appellant, and the officers attempted to arrest him. The pepper spray did not affect appellant. Appellant grabbed Officer Bryan around her waist with both of his arms and brought her to the ground. Appellant landed on top of Officer Bryan. Officer Bryan's right leg was pinned under appellant. Officer Bryan testified that appellant grabbed her right foot in a bear hug and then began twisting it. The officers repeatedly told appellant to let go of Officer Bryan's leg, but he would not. Instead, appellant continued to twist Officer Bryan's foot.

Officer Bryan thought that appellant was breaking her foot. She was screaming and in extreme pain. Officer Long and Officer Bailey began to hit appellant in an attempt to make him let go of Officer Bryan's foot. Officer Long hit appellant in the torso area, and Officer Bailey hit him in the face. Officer Long testified that, with each hit, he told appellant to let go of Officer Bryan. However, appellant did not comply with the commands. Officer Bailey stopped hitting appellant and then tried to help Officer Bryan free her leg. Officer Long began punching appellant in the face. After Officer Long hit appellant several times, Officer Bryan was able to free her leg from appellant. Officer Long testified that, once Officer Bryan freed her foot, he stopped hitting appellant. The officers arrested appellant and placed him in handcuffs. Officer Bryan and appellant were both taken to the hospital for treatment.

Through the testimony of the officers, the State presented detailed evidence supporting the allegations in the indictment. The State also introduced into evidence audio recordings that were made during the incident. The audio evidence was consistent with the officers' testimony. Appellant claimed at trial that he did not assault Officer Bryan but that, instead, the officers made up the story that he had assaulted her in an attempt to justify the amount of force that they used on him during the altercation. Appellant also claimed that the officers beat him up to retaliate against him because he had taken four officers to the ground during the earlier incident in which he was arrested for disorderly conduct. Appellant testified in support of his claims.

3

Anthony testified that he saw the altercation between appellant and the police from inside the house. Anthony also testified that appellant did not assault Officer Bryan.

Although appellant does not attack the sufficiency of the evidence, a substantial part of his brief is devoted to attacking the credibility of the officers' testimony. As the trier of fact, the jury was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). In that role, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Thus, the jury was free to believe the officers' testimony and to disbelieve appellant's and his son's testimony. *Id.* As demonstrated by its verdict, the jury believed the officers and rejected appellant's claims.

*Brady Issue*

Before an accused may succeed in showing a *Brady* violation, he must show that (1) the evidence is favorable to him because it is exculpatory or impeaching, (2) the State suppressed the evidence either inadvertently or willfully, and (3) the suppression of the evidence resulted in prejudice (i.e. that it was material). *Ex parte Reed*, 271 S.W.3d 698, 726-27 (Tex. Crim. App. 2008). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* at 727. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the case. *Id.*

The record shows that, during trial, the State provided appellant's counsel with a narrative report that had been prepared by Officer Bailey. However, that report was not introduced into evidence and did not become a part of the trial record. On appeal, appellant claims that the State failed to disclose Officer Bailey's actual report and that the report produced at trial was an altered version of the actual narrative.

Appellant has attached copies of two narrative reports as appendixes to his appellate brief. He contends that the report attached as appendix 1 is the false document that was produced during trial and that the report attached as appendix 2 is the actual report on file at the Abilene Police Department.[1] Appellant did not raise a *Brady* claim in the trial court. He did not file a motion for new trial. He did not present any evidence to the trial court in support of a

---

[1] In the body of his brief, appellant refers to the reports as appendixes A and B to his brief. However, they are attached to the brief as appendixes 1 and 2, and we will refer to them as appendixes 1 and 2.

*Brady* claim. Thus, the reports attached as appendixes to appellant's brief are not part of the trial record. Because the reports are outside the record, we cannot consider them for the purpose of this appeal.[2] *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004). While appellant asserts in his appellate brief that the State produced the narrative attached as appendix 1 to his brief and that the narrative attached as appendix 2 to his brief is the actual narrative, assertions in appellate briefs are not evidence. *Davila v. State*, 651 S.W.2d 797, 799 (Tex. Crim. App. 1983); *Rodriguez v. State*, 955 S.W.2d 171, 176 (Tex. App.—Amarillo 1997, no pet.). The record contains no evidence as to (1) which narrative report or reports the State produced at trial and (2) whether the State withheld production of a report. In the absence of such evidence, appellant cannot show that the State withheld any evidence that was favorable to him. Therefore, appellant cannot prevail on his *Brady* claim.

Appellant cannot succeed on his *Brady* claim for an additional reason. We will assume for the purpose of our analysis that we can consider the appendixes to appellant's brief. The narrative attached as appendix 1 and the narrative attached as appendix 2 are almost identical. Both narratives are one page long. The narratives describe in detail the altercation between appellant and the officers. The narratives state, among other things, that appellant punched Officer Bryan in the left side of her head with his right fist and that Officer Bryan's leg was pinned under appellant when he was on the ground. The only differences in the narratives are shown in italics below:

> [Appendix 1]: [Appellant] was repeatedly told to let go of Officer Bryan's leg and would not comply. [Appellant] began grabbing at the gear on my belt with his free hand which would be his right hand. He *also* grabbed my right hand and pulled it back under him to try to pin it.

> [Appendix 2]: [Appellant] was repeatedly told to let go of Officer Bryan's leg and would not comply. [Appellant] began grabbing at the gear on my belt with his free hand which would be his right hand. *I took hold of two fingers on his right hand to maneuver his hand away from me.* He *then* grabbed my right hand *with his left hand* and pulled it back under him to try to pin it.

Appellant claims that the statement that he grabbed Officer Bailey's right hand with his left hand contradicts the officers' testimony that he continued to twist Officer Bryan's foot with

---

[2]The State has filed a motion to strike the narratives from the appellate record. In an order issued today, June 23, 2011, we have granted the State's motion because the narratives are not part of the record.

his left hand. Therefore, appellant claims that he could have impeached the officers' testimony with the statement. The fact that appellant may have let go of Officer Bryan's foot with his left hand at some point during the struggle would not mean that he did not twist it at other times. Nor would it mean that Officer Bryan would have been able to free her leg from underneath appellant's body. The officers testified that Officer Bryan's leg was pinned under appellant while he was on the ground. Officer Bryan said that appellant had her right foot in a bear hug. She also said that appellant started twisting her foot and that it felt like he was breaking it. Considering all the evidence at trial, we conclude that the possibility appellant was not twisting Officer Bryan's foot with his left hand for the entire duration of the altercation was not material evidence. Appellant's first issue is overruled.

*Audio Recording*

In his second issue, appellant contends that the State altered or tampered with the audio portion of the recording that was admitted into evidence as State's Exhibit No. 29. This exhibit is a DVD copy of three videos that were recorded by equipment in patrol cars. The DVD contains audio and video. Appellant asserts that the State altered the audio portion of his altercation with the officers. The video does not show the altercation; the patrol car was parked on the street in front of appellant's house. The altercation occurred in appellant's backyard. Appellant contends that proof of tampering is evidenced by the fact that, during the audio recording, Officer Bryan made a radio call requesting that more units be sent to the scene while simultaneously screaming, "Let go of me!" Appellant asserts that the scream was not on the original audio and was added after the fact.

At trial, appellant contended that the audio recording did not depict what actually happened between the officers and him. Appellant claimed that the officers made false statements during the altercation so that the audio recording would support their version of events. However, appellant did not object to the admission of the audio at trial. To preserve error for appellate review, the complaining party must make a timely, specific objection in the trial court and obtain a ruling on the objection. TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Appellant did not preserve any error in the admission of the audio for review. Once the audio recording was admitted into evidence, it was within the province of the jury to evaluate the credibility of the officers' statements in the recording. *Williams v. State*, 235 S.W.3d 742,

6

750 (Tex. Crim. App. 2007). An appellate court may not reevaluate the weight and credibility of the record evidence and thereby substitute its judgment for that of the jury. *Id.* Because appellant failed to preserve error, he cannot succeed on his second appellate issue.

However, even had appellant preserved error, the result would not be different on appeal. Appellant did not present evidence, such as expert testimony, in support of his claim that the State altered or tampered with the audio recording. During Officer Bailey's testimony, parts of the audio were played. When asked about the audio, Officer Bailey identified herself as the person saying "let go of me" at one point during the altercation. The record does not support appellant's claim that the State added anything to the audio recording after the fact. Appellant's conviction is not invalid. His second issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.

PER CURIAM

June 23, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel[3] consists of: Wright, C.J.,
McCall, J., and Hill, J.[4]

---

[3]Rick Strange, Justice, resigned effective April 17, 2011. The justice position is vacant pending appointment of a successor by the governor.

[4]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.